UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JULIO VALDEZ, | ) | CASE NO. 4:06 CV 663 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| FCI-ELKTON WARDEN | ) | AND ORDER |
| T.R. SNIEZEK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 23, 2006, pro se plaintiff Julio Valdez filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Warden T.R. Sniezek, FCI-Elkton Physician M. Azzam, FCI-Elkton Clinical Director Dr. Keller, FCI-Elkton Physician's Assistant G. Bullock, FCI-Elkton Physician's Assistant Wayne Flatt, FCI-Elkton Physician's Assistant Ms. Barnes, and Bureau of Prisons ("BOP") Regional Director Scott Dodrill, BOP Health Programs Employee Dr. Kendig, and FCI-Elkton Clinical Director Dr. John Manenti. In the complaint, plaintiff alleges that the defendants have been deliberately indifferent to his serious medical needs. He seeks compensatory and punitive damages.

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

*Background*

Mr. Valdez was convicted on drug conspiracy charges and sentenced on December 21, 2001 to 192 months of incarceration followed by five years of supervised release.  His projected release date is January 4, 2015.  Immediately following his conviction, Mr. Valdez was sent to the Federal Detention Center in Milan, Michigan ("FDC-Milan").  On July 18, 2001, a routine test conducted by FDC-Milan medical personnel revealed elevated levels of Glucose, Alkaline Phosphate, and "ALT" in Mr. Valdez's blood.[2]  The sample was sent to Garcia Laboratories for further testing which yielded a positive result for Hepatitis A, and Hepatitis C, on July 27, 2001.  At some point thereafter, Mr. Valdez was transferred to FCI-Elkton.

FCI-Elkton Physician Dr. Manenti ordered additional blood tests to be performed on April 5, 2002 and April 9, 2002.  These tests both showed elevated levels of ALT.  Approximately one year later, on May 20, 2003, FCI-Elkton Physician Dr. Ross Quinn ordered new blood tests to be performed on Mr. Valdez.  This test revealed increases in both ALT and AST levels.  He ordered an HCV RNA test to confirm the diagnosis of Hepatits.  This test, conducted on September 5, 2003, substantiated the original diagnosis and revealed that Mr. Valdez presented Hepatitis C Genome Type 1b.  Another blood test was conducted in October 2003 showing sustained elevation of both ALT and AST levels.  Dr. Ross then initiated the protocol to pursue interferon treatment.[3]

---

[2]   "ALT" or Alanine Aminotransferase and "AST" or Aspartate Aminotransferase are enzymes found mostly in liver cells.  An elevation in the amount of ALT or AST in the blood indicates possible liver damage.  See www.cdc.gov and www.hepatitis.about.com .

[3]   The complaint does not clearly set forth the process though which Mr. Valdez must go before obtaining interferon treatment.  It appears that he must undergo a psychological examination and obtain a favorable result, have an Anti-HCV (Hepatitis antibody test) which
(continued...)

On July 14, 2004, Mr. Valdez was taken to the Salem Community Hospital for a liver biopsy.  The sample was sent to the Armed Forces Institute of Pathology which determined that Mr. Valdez had chronic Hepatitis C with marked activity and portal-periportal fibrosis.  Some necrosis of the liver was also noted.  Several more blood tests were taken showing elevated ALT and AST levels.

Based on this information, FCI-Elkton Physician Michele Keller submitted an Approval for Treatment Form to the Bureau of Prisons recommending that Mr. Valdez begin receiving Interfereon and Ribaviron treatments.  The request was denied with the finding that Mr. Valdez was in the "relatively early disease" stage and suggesting that he complete a drug treatment program and abstain from getting tatoos before reapplying the following year for treatment.  Mr. Valdez asserts that the defendants have been deliberately indifferent to his serious medical needs, denied him substantive due process by their actions, and discriminated against him on the basis of his Mexican national origin.

### *Exhaustion of Administrative Remedies*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998).  To establish that

---

[3](...continued)
showed a positive result, demonstrate elevated ALT levels on his past three blood tests, be cleared by a physician, show no contradiction to ribaviron or interferon, have a HCV RNA positive result on a blood test, obtain a liver biopsy, obtain an HCV genotype test, and have his treating physician complete an algorithm for treatment form.  That form is reviewed by the Bureau of Prisons Chief of Health Programs who must either approve or disapprove the recommended treatment.

he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with the institution staff member designated to receive such requests. 28 C.F.R. § 542.14. If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

Mr. Valdez has not demonstrated that he has exhausted his administrative remedies for each claim against each defendant. He attaches copies of a BP-8.5 Request for Informal Resolution form, the response he received from Warden Sniezek to the BP-9 he submitted, and the response he received from the Regional Director to his BP-10 form. There is no indication, however, that he submitted a BP-11 Appeal to the General Counsel. Section 1997(e) requires prisoners to exhaust their administrative remedies *prior* to filing suit. They may not exhaust these remedies during the pendency of the action, See Freeman v. Francis, 196 F.3d 641,643 (6th Cir. 1999). Moreover, they cannot abandon the process before completion and claim that they exhausted their remedies nor can they assume that a grievance would be futile and proceed directly to federal court with their complaints. See Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999). The inmate bears the burden of establishing complete exhaustion of administrative remedies. Brown, 139 F.3d at 1104. Mr. Valdez has not satisfied that burden.

In addition, Mr. Valdez filed a Motion to Supplement his complaint to add a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §2671 against the United States and the BOP. Before a claim under the FTCA can proceed, the claimant must first present the claim to the appropriate Federal agency and his claim must be denied by the agency in writing and sent by certified or registered mail. Mr. Valdez provides a copy of the claim he submitted to the Northeast Regional Director of the BOP on December 7, 2005. He does not provide a copy of the agency's response to the claim. Although the failure of an agency to make final disposition of a claim within six months after it is filed shall be deemed a final denial of the claim for purposes of this statute, the six month time period had not expired when Mr. Valdez filed his Motion to

Supplement.[4] His claim under the FTCA must also be dismissed without prejudice for failing to exhaust administrative remedies.

### *Conclusion*

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e and 28 U.S.C. §2671. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

S/Peter C. Economus - 6/6/06
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE

---

[4] The Motion to Supplement was filed on June 2, 2006. It was signed and dated by Mr. Valdez on May 31, 2006.

[5] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.